IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNIVERSAL TURBINE PARTS, LLC, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PRATT & WHITNEY CANADA CORP., | : | |
| PRATT & WHITNEY CANADA | : | NO. 2:24-cv-02021-MRP |
| HOLDINGS CORP., and P&WC TURBO | : | |
| ENGINES CORP., | : | |
| | : | |
| Defendants. | : | |

**ORDER**

**AND NOW,** this 30th day of July, 2025, upon consideration of Defendant Pratt & Whitney Canada Corp.'s Motion to Dismiss Plaintiff's Complaint (ECF No. 21), the responses thereto, and oral argument regarding the same, it is hereby **ORDERED** that the Motion is **DENIED**.[1]

---

[1] Defendants, Pratt & Whitney Canada Corp., et. al. ("Pratt"), move to dismiss the antitrust claims filed by Plaintiff, Universal Turbine Parts, LLC ("UTP"), for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Court analyzes Pratt's conduct under the rule of reason standard because the type of conduct that UTP alleges—exclusive dealing, bundling, refusal to deal, and supracompetitive pricing—does not fall within the narrow category of *per se* illegal conduct that "on its face, has 'no purpose except stifling of competition.'" *Eichorn v. AT & T Corp.*, 248 F.3d 131, 143 (3d Cir. 2001) (quoting *White Motor Co. v. U.S.*, 372 U.S. 253, 263 (1963)).

"The applicable law is the same for each of [UTP]'s four claims." *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 402 (3d Cir. 2016) (citations omitted). "To establish an actionable antitrust violation, [UTP] must show both that [Pratt] engaged in anticompetitive conduct and that [UTP] suffered antitrust injury as a result." *Id.* Moving for dismissal, Pratt argues that UTP failed to meet both requirements. This Court disagrees.

Under the rule of reason, the illegality of an exclusive dealing arrangement depends on a finding of substantial foreclosure of competition. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 271 (3d Cir. 2012). In conducting this inquiry, we consider Pratt's alleged scheme "as a whole." *Eisai*, 821 F.3d at 403; *see also Contl. Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). This Court concludes that UTP has sufficiently alleged substantial foreclosure because Pratt's "challenged practices bar a substantial number of rivals [and] severely restrict the market's ambit." *U.S. v. Dentsply Intern., Inc.*, 399 F.3d 181, 191 (3d Cir. 2005).

The cornerstone to Pratt's scheme is its contractual restrictions on the DOFs, which have dramatically reduced choice in the once-thriving aftermarket ecosystem. Prior to 2016, when Pratt initiated its scheme, the market flourished with independent used parts suppliers (like UTP) and independent

BY THE COURT:

_____
Hon. Mia R. Perez

---

MROs. Compl. ¶¶ 6, 30, 34-35. Airplane operators had the choice of whether to use used parts in lieu of new ones, or independent MROs in lieu of DOFs. *Id.* ¶¶ 28-30, 35. Now, Pratt prohibits the DOFs from selling used engine cores or parts to independent suppliers (¶¶ 47-52), purchasing or installing used parts from independent suppliers (¶¶ 69-72, 81-85), performing "bag and tag" services for independent suppliers (¶¶ 73-77), and selling used parts over the counter (¶¶ 78-80). In line with these restrictions, certain MROs have since stopped working with UTP at Pratt's direction. *Id.* ¶ 75. Pratt controls 80% of the market for PT6 MRO services and 100% of the market for PW100 MRO services, as well as 75% of all engine and part sales across both engine types. *Id.* ¶¶ 117, 123-124. The result is a loss of choice for airplane operators, whose only remaining option is to transact with Pratt and the DOFs that it "controls." *Id.* ¶ 40. In the Third Circuit, this is harm to competition and constitutes foreclosure. *See, e.g.*, *Dentsply*, 399 F.3d at 191 (holding that a contract provision that "ensur[ed] that the key dealers offer [defendant's product] either as the only or dominant choice" foreclosed competition and was an antitrust violation).

Pratt responds by disputing UTP's factual allegations and arguing that they are overly conclusory. Disputing a plaintiff's well-pled factual allegations is not appropriate at the motion to dismiss stage. Moreover, with respect to how the contractual restrictions worked to foreclosure competition, UTP's allegations are extensive and detailed. This Court must therefore rely upon them as true for purposes of dismissal.

As for antitrust injury, UTP's allegations of substantial foreclosure are sufficient to satisfy this threshold requirement. *See, e.g.*, *ZF Meritor*, 696 F.3d at 289 (concluding that there is "sufficient evidence that Plaintiffs suffered antitrust injury" because "Eaton's conduct unlawfully foreclosed a substantial share of the HD transmissions market, which would otherwise have been available for rivals, including Plaintiffs"); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 622 F. Supp. 3d 22, 56 (E.D. Pa. 2022) ("Substantial foreclosure is a form of antitrust injury, especially where the foreclosure is by a monopolist.").

Since UTP has adequately alleged both anticompetitive conduct and antitrust injury at this early stage in the litigation, Pratt's motion is denied.